COLORADO CENT. CONSOLIDATED MIN. CO. v. TURCK.

(Circuit Court of Appeals, Eighth Circuit. May 9, 1892.)

No. 42.

1. MINES AND MINING—EJECTMENT—DEFENSES.
   In ejectment for a mining claim, the issue raised by the pleadings was whether plaintiff was the owner and entitled to the possession of an alleged vein having its apex within his location, after the same had passed under the side lines of an adjoining claim. Held, that it was not a change of the issue to defend upon the ground that both parties had the apex of separate veins within the boundaries of their claims, which veins, in descending, became united within the side lines of defendant's claim; and that therefore defendant was entitled to hold all of the vein from the point of junction downward.

2. SAME—INCONSISTENT DEFENSES.
   Defendant was also entitled to set up that the alleged vein, having its outcrop in plaintiff's claim, was not a separate and independent vein, but simply one of numerous ore channels, which together formed one broad lode having its apex partly in plaintiff's and partly in defendant's claim; and it was immaterial that these defenses were inconsistent in the sense that proof of one was necessarily disproof of the other, for in ejectment defendant may set up anything tending to disprove plaintiff's general claim of ownership and right of possession.

3. SAME—ADJOINING CLAIMS—FOLLOWING VEINS.
   The right of a mine owner, under Rev. St. § 2322, to follow a vein whose apex lies within the boundaries of his claim beyond the vertical side lines thereof and within the lines of other claims, is not confined to cases in which the claim thus entered is held under a junior patent or certificate, and the relative dates of the patents or certificates are immaterial.

**4. SAME.**

Where a vein upon which a location rests, after being followed for a considerable distance, forks and passes out through the side line of the location, so that the outcrop of one fork is on an adjoining claim, this whole fork belongs to the owner of the latter claim.

**5. SAME—EJECTMENT—VERDICT—DESCRIPTION.**

In ejectment to recover a mining vein the complaint described the premises as "so much of said Aliunde Tunnel Lode No. 2 mining claim and premises as lies beneath the depth of 300 feet beneath the surface of the ground, north of the north side line of said Aliunde Tunnel Lode, carrying said north line down vertically, and from thence on the pitch of said lode northwestwardly, and measuring thence along the line of said Aliunde Tunnel Lode No. 2, a distance of 600 feet next west of the northeast line of said claim." *Held,* that a verdict in favor of plaintiff for "the lode and premises described in the complaint" described the premises with sufficient accuracy.

**6. SAME—JUDGMENT—APPEAL.**

The fact that the court in entering final judgment did not award to plaintiff all the premises to which he was entitled under the verdict, affords no ground of complaint to defendant.

**7. APPEAL—PRESUMPTIONS.**

Where the jury, after retiring, are recalled at their own request, and given additional instructions, in the absence of counsel, and there is no showing as to the reasons for such absence, or whether any efforts were made to secure their presence, it will be presumed on appeal that the court acted with regularity and propriety.

In Error to the Circuit Court of the United States for the District of Colorado. Affirmed.

Statement by THAYER, District Judge:

This was an action at law, brought by the defendant in error to recover possession of a mining lode or vein known as the "Aliunde Tunnel Lode No. 2," situated in the Argentine mining district, Clear Creek county, state of Colorado. The plaintiff in error, who was defendant in the lower court, is the owner and is in possession of three mining claims known respectively as the "Colorado Central," the "Subtreasury" and the "Colorado Central Extension" claims. The Aliunde claim belongs to the defendant in error, and adjoins the Colorado Central claim on the south, and at its northern end also abuts against the Subtreasury claim. The accompanying diagram (plat B) shows with sufficient accuracy the relation of the several claims to each other, their general direction, and the manner in which they adjoin, and in some places overlap on the surface of the earth.

PLAT B.

The region of country where these claims are laid is mountainous, and the surface is broken to a considerable extent by ridges and ravines. As a general rule the granite—or, as it is usually termed, the "country rock"—in which the ore fissures are found lies from 50 to 100 feet below the surface of the earth, and is covered to that depth with a slide or wash from the mountains, consisting of loose gravel and detached boulders. By reason of that fact, as the evidence shows, it is and was a difficult task to trace the true apex or outcrop of a vein at the surface of the country rock. On the trial in the lower court the defendant in error maintained, and offered considerable evidence tending to show, that he had the apex of a mineral bearing vein within the side lines of the Aliunde claim, and had traced the apex or outcrop of that vein for some distance within the boundaries of his claim; that the vein became divided a short distance below the surface of the country rock, forming a north and south vein, (so termed,) as shown on the accompanying diagram, (plat A,) the same being a transverse section:

—That the north vein had a dip to the northwest of about 70 degrees from the horizon, and at a distance of about 60 feet below the outcrop or apex passed under the south side line of the Colorado Central claim. That the south vein descended into the earth with a slight dip to the northwest, but eventually passed under the south side line of the Colorado Central, and on its strike and dip also became united with the north vein underneath the Colorado Central claim. On the other hand, the plaintiff in error stoutly maintained before the jury (and this seems to have been its chief contention) that both the Colorado Central and Aliunde claims were laid on one and the same broad lode, which was from 100 to 200 feet wide, and was confined between two porphyry walls; that neither party to the suit had the apex of this broad lode exclusively within the boundaries of their respective claims, and that, in view of that fact, the defendant in error had no right, under the statutes of the United States, (section 2322,) to follow his alleged vein outside of a ver-

tical plane extended downward through the side lines of his claim. In addition to the main defense last mentioned, the plaintiff in error presented three other defenses in the form of instructions, which defenses, it may be conceded, were not distinctly outlined by the pleadings, and all of which the circuit court overruled. Without pretending to state the exact language of the several instructions last referred to, it will suffice to say that the court was asked to declare in substance—*First*, that, if the plaintiff below had the apex of what might be termed an independent vein within his own side lines, and the defendant below also had the apex of an independent vein within its side lines, and the two veins, descending downward, became united within the side lines of the Colorado Central claim, then the defendant was entitled to hold all of the vein from the point of junction downward, because it was the owner of the senior patent; *second*, that the proprietor of the Aliunde claim was in no event entitled to recover his vein within the side lines of the Colorado Central claim, because the latter claim was patented before the discovery on which the Aliunde patent rested; and, *third*, that the proprietor of the Aliunde claim was not entitled to recover his vein under the Colorado Central claim (the latter being held under the oldest patent) if the jury believed the Aliunde lode "to be a part of the same lode as that on which the Colorado Central patent issued." As the jury found against the plaintiff in error on its main contention that there was only one broad lode covered by the several claims, and as that issue was submitted under directions from the court that are not challenged, the most important questions that we have to determine concern the action of the lower court with reference to the three other defenses above outlined. Of the four claims above mentioned the Colorado Central claim appears to have been held under the oldest patent. The Aliunde claim, however, was patented before the Colorado Central Extension claim.

*C. J. Hughes* and *R. S. Morrison*, for plaintiff in error.

*Willard Teller* and *Harper M. Orahood*, for defendant in error.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District Judges.

THAYER, District Judge, after stating the case as above, delivered the opinion of the court.

The circuit court appears to have refused the two instructions embodying the first of the three propositions above stated, on the ground that such instructions changed the issue which the defendant below had made during the progress of the trial, and for the further reason that the evidence was insufficient to warrant the jury in finding that there were separate and independent veins, one of which had its apex within the Aliunde claim and the other within the side lines of the Colorado Central. We are satisfied that the trial court erred in so far as its refusal to give the instructions was based upon the ground that they changed the issue and presented a defense which the defendant was not entitled to make. The action was in ejectment, and the issue raised by the pleadings was whether the plaintiff in the lower court was the

owner and entitled to the possession of the alleged vein having its apex within the Aliunde claim, after the same had passed under the Colorado Central side lines.    In support of the negative of that issue the defendant had the right to show any fact which disproved the allegation of ownership and right of possession.    It was at liberty to say that the alleged vein having its outcrop within the Aliunde claim was not a separate and independent vein, but simply one of numerous ore channels, which together formed one broad lode having its apex partly in the Aliunde claim and partly in the Colorado Central; or, failing in that contention, it had the right to show that both parties had the apex of separate veins within the boundaries of their claims, which veins, in descending, became united within the side lines of the Colorado Central.    It is true that these propositions were inconsistent in the sense that the proof of one necessarily disproved the other, but, considering the nature of the action, we do not regard that as an insuperable objection to the allowance of both defenses.    It frequently happens in ejectment suits that a defendant is permitted to derive title from several independent sources, and to defend his possession by setting up several conflicting outstanding titles.    When, as in ejectment or replevin, a party is permitted to allege generally that he is the owner and entitled to the possession of certain property, the opposite party must be allowed to show any state of facts that tends to disprove such assertion.

The second ground on which the trial court based its refusal to give the instructions asked by the defendant is entitled to more weight. The defense that these instructions raised was predicated on the last clause of section 2336 of the Revised Statutes of the United States, which is as follows:

"Where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection; but the subsequent location shall have the right of way through the space of intersection for the purposes of the convenient working of the mine.    And, where two or more veins unite, the oldest or prior location shall take the vein below the point of union, including all the space of intersection."

The trial court directed the jury to disregard the defense based on this section of the statute, not only because it changed the issue, but for the reason, as stated in its charge, that there was no evidence to locate the outcrop to any considerable extent of a separate vein within the Colorado Central side lines, and for the reason that, if there was such a vein, it was impossible to say from the testimony whether it had its apex within the Colorado Central side lines or within the side lines of claims adjoining it on the northwest, which were held under patents junior to the Aliunde patent.    In other words, the circuit court appears to have been of the opinion that the developments made and proven by the defendant company were insufficient to establish the existence of a vein, within the meaning of section 2336, which in its descent united with the Aliunde vein.    It is manifest, we think, that there was no evidence to prove the existence of the vein or the outcrop in ques-

tion, except such inferences as might be drawn from the developments in the Grant raise, the Herrick raise, the O'Mally raise, and the shaft sunk in the Jim Hall tunnel. These raises were put up some time after the owner of the Aliunde in the development of what is termed his "north vein" had passed under the Colorado Central's south side line, and they were put up, it seems, by the defendant company, not for the purpose of obtaining ore, but solely for the purpose of demonstrating either that there was but one wide lode between the porphyry walls, or that one fork of the vein on which the owner of the Aliunde was working had its outcrop within the Colorado Central side lines, and that the defendant was entitled to the vein below the point of junction. The Grant raise and the Herrick raise were put up at about the same inclination, and together extended from the defendant's third level nearly to the surface of the country rock. The Herrick raise was much shorter than the Grant raise, and was merely an extension of the latter in the direction of the surface. It was not claimed by the defendant company that the Grant raise had been put up on what might be termed a continuous streak or seam from the third level, nor was there any satisfactory evidence that such alleged ore streak as had been followed in that raise fell into the Peterson stope below the third level, into which the Aliunde vein had been traced and had descended. It was proven, however, by the defendant that a seam or vein varying from half an inch to an inch in thickness had been traced in the Herrick raise nearly to the surface, but the plaintiff's evidence tended strongly to show that the so-called "vein" in the Herrick raise was purely local; that it was not followed downward in the Grant raise, and did not extend for any considerable distance on either side of the raise in the direction of its strike. No stoping had been done by the defendant along the Herrick raise or the Grant raise. Moreover, the Herrick raise, as well as the O'Mally raise, had been put up so near to the north boundary line of the Colorado Central claim that it was somewhat doubtful, under the testimony, whether the ore channels that had been followed in these raises had their apex within the Colorado Central side lines or within the lines of other junior claims next adjoining it on the north. The O'Mally raise, on which the defendant also relied to establish the existence of a separate vein with an apex within its own side lines, had been put up from the second level nearly to the surface, at a point about 250 feet northeast of the Herrick raise. Some stoping had been done by the defendant at the foot of the O'Mally raise, but the stope lay at such an angle as would carry the apex of the vein within the side lines of the Aliunde, if the vein continued at that angle to the surface of the country rock. The O'Mally raise had not been extended downward below the second level. It was accordingly a matter of speculation where the alleged ore channel on which the stoping had been done would lead to in its descent, or whether it extended for any considerable distance below the foot of the raise. About midway between the Herrick raise and the O'Mally raise, at the third level, the Benny crosscut had been run, which tended strongly to demonstrate that no connection existed be-

tween the veins in the Herrick and O'Mally raises, and that both were merely local veins of no considerable extent or significance. The shaft above referred to as having been sunk in the Jim Hall tunnel seems to have been still further to the northeast, and is not shown on any of the drawings or models submitted to our inspection. The developments in that shaft, whatever they may have been, throw no light on the question now under consideration so far as the present record discloses. On the other hand, the evidence offered by the owner of the Aliunde had a strong tendency to show that he had the apex for a considerable distance within his side lines of a well-defined vein with the usual hanging and foot walls, which descended into the earth, with a uniform dip, at least to the 500-foot level. Levels had been run and shafts had been sunk to determine both the dip and the strike of the vein; and, what is of more importance, considerable stoping had been done along the vein on all of the levels. In view of these facts, we must conclude, as the circuit court appears to have done, that the evidence tending to show the existence of a separate vein with its apex within the Colorado Central boundaries which descended and formed a junction with the Aliunde vein was too uncertain and speculative to warrant the submission of that issue to the jury. Great difficulties, no doubt, stood in the way of furnishing other and better evidence of the existence of the supposed vein within the defendant's territory, but we are persuaded that a finding in favor of the defendant, based upon such evidence as was offered, would have rested too largely upon speculation, and too little upon legitimate inferences of fact, to be tolerated in a judicial proceeding. There was no error, therefore, in the charge of the lower court, so far as this issue was concerned, or in its refusal to give the defendant's instructions presenting the issue.

The defendant's second proposition, above outlined, was based on a construction of section 2322 of the Revised Statutes of the United States, the material part of which is as follows:

"The locators of all mining locations heretofore made, or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges."

The instruction tendered by the defendant company in effect asked the circuit court to declare that section 2322 does not permit one who

locates upon the apex of a lode or vein to follow the vein outside of his side lines and underneath the boundary lines of an adjoining proprietor if the latter holds under a senior patent. As the proposition was stated in the instruction it excluded all consideration of the question whether the Colorado Central Company had or had not first discovered and located the same vein on the dip which the owner of the Aliunde was following underneath its territory. In other words, it asserted that the right given by section 2322 to the holder of the apex to follow his vein on its dip outside of the side lines of his claim is merely a right that can be asserted against an adjoining claimant holding under a junior patent or certificate. We are of the opinion that the instruction, as asked, was properly refused. It rested upon an interpretation of the statute that cannot be sustained in view of the language employed, and, so far as we are aware, has never, as yet, been adopted. In two cases (*Milling Co.* v. *Spargo*, 16 Fed. Rep. 348, and *Amador Medean Gold Min. Co.* v. *South Spring Hill Gold Min. Co.*, 36 Fed. Rep. 668) it was held that a patent for agricultural lands, issued under the pre-emption laws of the United States, carries the right to all mines underneath the surface to which no right has attached at the time the certificate of purchase or the patent issues, and that a reservation in such patent, saving the rights of proprietors of mining veins or lodes, related solely to those proprietors whose rights had attached before the lands were purchased for agricultural purposes. We think that the same effect cannot be given to a patent for a mining claim which appears to have been given in the cases cited to patents for agricultural land. The title acquired by a patent of the former description bears little resemblance to a title conferred by the latter, because it is acquired and held under the provisions of statutes differing widely both in their language and purpose. The statute conferring the right to follow a lode outside the side lines of a location, when the top or apex of the lode lies within the boundaries of the location, does not, in terms or by necessary implication, limit the exercise of that right, especially where mining claims are involved, to cases where the adjoining claims are held under junior locations or patents, and we think we would not be justified in placing such a limitation upon the right by construction. The practice of the general land office for many years also appears to have been opposed to the existence of any such limitation.

The instruction embodying the third and final proposition above stated was intended, as we are advised by the counsel who drafted it, to present the law applicable to a particular phase of the testimony. The defendant company had begun work on the Colorado Central claim at least 600 feet northeast of the disputed territory, and had there discovered a vein on which the Colorado Central location and patent appear to rest. From this point it had drifted along the vein on several levels, in a southwesterly direction, until it reached the disputed ground. There was testimony in the case having a tendency to show that the Colorado Central vein forked as it entered the disputed territory, and that the apex or outcrop of one of the forks (that on which the Aliunde

location rested) had departed from the Colorado Central side lines, and was within the Aliunde location, although, by reason of the dip, a portion of the fork of the vein was still underneath the Colorado Central claim.   We are advised that by reason of this phase of the testimony the instruction now under consideration was tendered, the intent being to obtain a declaration that upon the state of facts last mentioned the proprietor of the Aliunde could not follow the fork of the vein outside of his side lines, he being a junior patentee, although the outcrop was within his own boundaries.   The instruction was not very well calculated to enlighten the jury, because it did not contain a sufficient statement of the facts upon which it was predicated to render it intelligible. But, waiving that objection, we think it was bad for other reasons.  Upon the assumption that the Colorado Central vein had divided on its strike to the southwest, and that the defendant company had lost the outcrop of one, if not both, forks of the vein by reason of the narrowness of its claim, we fail to perceive upon what principle it could claim the fork of the vein, the outcrop of which had been lost.   If the vein on which the Colorado Central location rested became divided as it entered the disputed territory, and the outcrop of one fork crossed into the Aliunde territory, then it followed that the Colorado Central claim had been laid rather obliquely to the course of the outcrop, and in that event we are of the opinion that the defendant lost that fork of the vein which had passed outside of its side lines.   In other words, so far as that fork is concerned, the south end line of defendant's Colorado Central claim must be regarded as a line drawn through the point where the outcrop passed through its south side line.   There was no error, therefore, in the refusal of the instruction.   *Argentine Min. Co.* v. *Terrible Min. Co.*, 122 U. S. 478, 7 Sup. Ct. Rep. 1356; *Mining Co.* v. *Tarbet*, 98 U. S. 463; *Iron Silver Min. Co.* v. *Elgin Mining & Smelting Co.*, 118 U. S. 196–209, 6 Sup. Ct. Rep. 1177.

Two questions of practice are also presented by the plaintiff in error, which remain to be considered.   The record shows that after the jury had been instructed and had retired, they asked for further directions as to a certain question of law, and that they were recalled, and further instructed by the court on that point, and none other; in this connection it may be said that the direction so given was merely a repetition, in substance, of a portion of the charge to which counsel for the defendant company had already saved their exception before the jury retired.   The record recites that "to the giving of said instruction (*i. e.*, the one in response to the inquiry of the jury) said defendant specially objects and excepts for the reason that the same was given without counsel for defendant being present as well as for the reason that the said instruction was contrary to law."   We are not advised by the record, any further than is above stated, of the details of the transaction of which complaint is made, and we think it manifest that the transaction as stated will not justify a reversal of the cause.   The rule, we concede, is well established that there ought to be no communication between the judge and jury after the latter have been charged and have retired to consider their ver-

dict, unless the communication takes place in open court, and, if practicable, in the presence of counsel on the respective sides. *Bank* v. *Mix*, 51 N. Y. 558; *State* v. *Patterson*, 45 Vt. 308; *O'Connor* v. *Guthrie*, 11 Iowa, 80; *Chouteau* v. *Iron-Works*, 94 Mo. 388–400, 7 S. W. Rep. 467; *Stewart* v. *Cattle Ranche Co.*, 128 U. S. 383–390, 9 Sup. Ct. Rep. 101. But in the present case the communication complained of evidently took place in open court, and, if defendant's counsel were not present, as their exception recites, it may have been due to their own fault, in absenting themselves from the court room when they should have remained in attendance. In the absence of any showing as to the cause of their absence, or as to whether any efforts were made to secure their presence, we are bound to indulge in every presumption in favor of the regularity and propriety of the court's action.

Complaint is also made that the verdict of the jury is too general, and that it does not define the boundaries of the disputed territory east and west in feet and inches, as an engineer might perhaps have done by an actual measurement. We think this objection is likewise untenable. The complaint filed in the circuit court described the disputed premises with all reasonable accuracy and certainty as "so much of said Aliunde Tunnel Lode No. 2 mining claim and premises, as lies beneath the depth of 300 feet beneath the surface of the ground, north of the north side line of said Aliunde Tunnel Lode, carrying said north line down vertically, and from thence on the pitch of said lode northwestwardly, and measuring thence along the line of said Aliunde Tunnel Lode No. 2 a distance of six hundred feet next west of the northeast end line of said claim;" and the jury, by their verdict, found the issues joined for the plaintiff, and further found that the plaintiff was "the owner in fee of the lode and premises described in the complaint, and was entitled to the occupation and possession thereof." In view of these facts, the objection taken to the verdict, on account of its generality, is certainly without merit. In entering final judgment it seems that the circuit court did not award all of the premises to which the plaintiff was entitled by the verdict of the jury, but that is an error of which the defendant company cannot be heard to complain. Upon the whole, therefore, we find no material error in the record, and the judgment of the circuit court is accordingly affirmed.