## COLORADO CENT. CONSOLIDATED MIN. CO. v. TURCK.

(Circuit Court of Appeals, Eighth Circuit. February 6, 1893.)

### No. 42.

1. APPEAL—REVIEW—MATTERS NOT APPARENT ON THE RECORD.
    In an action of ejectment a reviewing court cannot consider or make computations upon a map which is merely introduced by counsel in argument, but is not made a part of the record.
2. SAME—MINING CLAIMS.
    In an action of ejectment to recover certain mining grounds as between the owners of adjoining claims one of the issues made by the pleadings was as to the point at which the vein passed out of the side line of one claim and into the other, but at the trial this issue was not pressed, and the court, with the acquiescence of counsel, charged the jury that plaintiff claimed 600 feet along the vein, and that the parties had apparently submitted that the case should be determined upon the point whether there was not one broad vein, having an outcrop in both locations. A recovery was had of the 600 feet. *Held*, that defendant was estopped from claiming on writ of error that the recovery was for more than was waranted by the evidence relating to the exact point at which the vein crossed the boundary line between the claims.
3. MINES AND MINING—ADJOINING CLAIMS.
    It appearing in such case that the vein in its dip passed through the side lines of plaintiff's claim into defendant's claim, the fact that the jury failed to find the exact depth at which the vein crossed the line was no ground for reversal, since the question of ownership and possession, which was the only one in issue, depended entirely upon the location and width of the apex of the vein.

**4. SAME.**
 When the apex of a vein passes out of the side line of a claim into an adjoining claim, the latter, though junior in date, gives to its owner the right to follow the vein in its dip underneath the senior claim.

In Error to the Circuit Court of the United States for the District of Colorado.

Action by John Turck against the Colorado Central Consolidated Mining Company to recover possession of a lode or vein known as the "Aliunde Tunnel Lode No. 2," situated in the Argentine mining district, Clear Creek county, Colo. There was a verdict and judgment for plaintiff, and defendant sued out a writ of error. The judgment was heretofore affirmed, (50 Fed. Rep. 888, 2 C. C. A. 67,) and defendant now petitions for a rehearing. Denied.

Charles J. Hughes, Jr., and R. S. Morrison, for plaintiff in error.
Willard Teller, for defendant in error.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District Judges.

THAYER, District Judge. The contention of counsel that the trial court awarded the defendant in error 15 feet more territory than he was entitled to under admissions contained in the pleadings, rests wholly upon the assumption that the record before us shows the exact location of the Harris shaft with reference to the point fixed by the lower court as the place where the apex of the Colorado Central lode crosses into the Aliunde claim. We have made a careful examination of the printed record, and we are unable to find any testimony which would enable us to say that the point of departure of the lode, as fixed by the trial court, is less than 150 feet southwestwardly from the Harris shaft. On the argument of the case in this court a map was produced, for the purpose of illustration, as we understand, which purports to be drawn on a given scale. By reference thereto, and assuming it to be in all respects accurate, we might perhaps ascertain the approximate distance from the Harris shaft southwestwardly to the point of departure in question. But there is nothing to identify the map as a part of the record evidence in the case, even if we felt justified in relying upon computations of distances which we might make with the aid of such map. With their superior knowledge of the testimony produced in the trial court, (much of which has not been incorporated into the printed record,) counsel may be able to say with great confidence that the Harris shaft is only 135 feet to the northeast of the point fixed by the trial court as the place where the Colorado Central lode crosses into the Aliunde claim, but such fact is not apparent from the record lodged in this court. Furthermore, we do not think that the plaintiff in error is in a position to urge successfully in this court that the verdict and judgment are excessive in the respect claimed in the petition for a rehearing. In the course of its charge, the trial court used the following language:

"And now, with reference to the territory claimed by plaintiff, of course it is only in so far as he holds the top and outcrop of the lode, or of that which he claims as exhibited in his own works, and extended down from the

Aliunde workings to the lowest levels. You must be of that opinion in order to find for him that he has this top and apex distinctly in his territory, and the extent of it towards the eastward is a question for your consideration. Formerly it was made quite a point,—the place where it comes into the location of the Aliunde No. 2; that is to say, the witnesses were given their opinion making some estimates and calculations as to the exact place in which it came. In this trial we have not had anything of that. The extent to which the plaintiff claims is, I believe, 600 feet from the west end of the Colorado Central location, going eastward along the line of the two locations 600 feet, which is not far from the Johnson upraise,—perhaps a little east of that upraise. That is correct? Mr. Teller: East, your honor. The Court: I do not see that the parties have drawn this question much in issue in this trial, and apparently they submit that you shall determine the case upon the point which they have contested, whether this which the plaintiff has in his territory is the top and apex of a distinct lode, or only part of the general top and apex of a broad lode extended far beyond that to the north."

It appears, therefore, that the jury were advised, in substance, that the exact point where the Colorado Central vein or lode crossed into the Aliunde claim had not been treated as a material point then in controversy; that both parties had apparently consented or agreed that, in lieu of fixing the exact point of departure of the vein claimed by the defendant in error, the jury should rather consider and determine the more important question whether the whole space between the porphyry walls was not in fact so broken up and permeated throughout with vein matter as to constitute it a single lode, with its apex lying partly within the limits of both claims. No exception was taken to this portion of the charge, nor is it embraced in either of the assignments of error. The jury must have understood what was thus said by the court as a direction to find in favor of the defendant in error to the full extent, or substantially to the full extent, claimed in the complaint, if they found in his favor on the other more important issue as to the width of the lode, which the parties had apparently made the vital issue on which the verdict should depend. We think, therefore, that the plaintiff in error is in no position to attack the verdict or judgment on the ground that they are excessive, even though it be true that the defendant in error has recovered a few feet, more or less, along the lode than his proof of an apex would seem to warrant. A timely exception should have been taken to the charge of the trial court if it erred in assuming that there was no material controversy between the parties as to the extent of the recovery.

Neither are we able to attach much importance to the suggestion of counsel that the judgment should have been reversed because the jury failed to fix the depth beneath the surface at which the alleged Aliunde vein passes underneath the side lines of the Colorado Central claim. According to the view entertained by this court, that is a question which will only become material, if at all, when there shall be an accounting between the parties as to the amount of ore extracted from the alleged vein. The suit at bar is an action to recover a mining lode on the ground that the lode has its true apex or outcrop within the Aliunde side lines. Whether in its descent the lode passes outside of those side lines at a depth "of about three hundred feet beneath the surface," as alleged in the complaint, or at a depth of only 150 feet, as the evi-

dence tended to show, is, in our opinion, a question which the trial court was under no obligation to submit to the determination of the jury. The question of ownership and right of possession, which was the sole question before the jury, depended upon the location and width of the apex of the alleged vein, and in no sense upon the depth at which it passed underneath the Colorado Central side lines. Although it is alleged in the complaint that the lode sued for has a pitch of about 60 degrees to the northwest, and at a depth of about 300 feet beneath the surface enters the Colorado Central claim, yet we do not regard these allegations as so far material that they must be proven precisely as laid. Whether, in an accounting suit, to be hereafter brought, the defendant in error will be estopped by this allegation, and by the verdict and judgment, from claiming any ores which lie at a depth of less than 300 feet below the surface, is a question which we do not care to discuss at this time. It is sufficient to say at present that the plaintiff in error was not prejudiced, so far as we can see, by the failure of the jury to fix the exact depth beneath the surface at which the vein in controversy enters its territory.

We are furthermore asked to grant a rehearing with respect to the question whether the jury was not entitled to determine as to the existence or nonexistence of independent veins which in their descent became united within the side lines of the Colorado Central claim. In support of this request the petition for a rehearing calls to our attention and quotes certain testimony, which unfortunately is not found in the printed record on which the case was submitted. Counsel have apparently overlooked the fact that in making up the record for this court some of the testimony produced in the lower court was by agreement suppressed or merely summarized. With reference to the contention that the trial court improperly withdrew the last-mentioned issue from the consideration of the jury, we deem it sufficient to say that the point was considered at some length in our previous decision, and on further reflection we find no occasion for receding from the views then expressed. As we formerly remarked, the evidence to establish the existence of an independent vein within the side lines of the Colorado Central (if its single or broad lode theory was rejected) depended wholly on developments in the Herrick and O'Mally raises, and the shaft sunk in the Jim Hall tunnel, the precise location of which latter shaft is not disclosed by the present record. If we concede that the thread of vein matter followed in the Herrick raise was followed practically to the slide or wash, and that the outcrop was within the side lines of the Colorado Central, and if we furthermore concede that the perpendicular raise in the O'Mally workings disclosed vein matter practically to the surface of the country rock, and was also within the Colorado Central territory, yet there was no evidence to establish the continuity or extent of the vein between these points. Not only was there no evidence to establish the continuity of the alleged vein, (which fact, under certain circumstances, might, no doubt, have been established by inference,) but the developments lower down, particularly in the

Benny cross-cut, in our judgment, demonstrated that no connection whatever existed between the two threads or seams of vein matter which had been followed to the slide in the Herrick and O'Mally raises. We must also again call attention to the fact that the seam of vein matter found in the O'Mally raise had not been followed downward below the second level to establish its connection with any of the lower workings. To these suggestions the reply is made that the evidence to establish the existence and outcrop of the vein on which the Aliunde location rests was equally vague and unsatisfactory. We are compelled, however, to dissent from that view, and for the following reasons: The apex of the Aliunde vein was established with reasonable certainty at three or four points within the limits of that claim, as counsel for the plaintiff in error fully concede. There was also considerable testimony which, in our opinion, showed the continuity and identity of the Aliunde vein, and its general direction, within the side lines of the claim, between the several points where the vein had been traced to the surface of the country rock. The vein in question had also been followed downward to a great depth, and it seems to have maintained a well-defined pitch and strike throughout the several workings. We are of the opinion, therefore, that the finding of the jury in favor of the existence of the Aliunde vein rests upon much more satisfactory evidence than that which was offered and relied upon to establish the existence of a similar vein with an outcrop within the territory of the Colorado Central. The defendant company undoubtedly did much to discredit its contention that the developments in the Herrick and O'Mally raises were sufficient to establish the existence of a continuous and well-defined vein between those points, which had its apex within the side lines of the Colorado Central claim, by its persistent contention throughout the trial that there were no well-defined separate veins between the two porphyry walls, because the whole intervening space between those walls had been broken up, and was in fact a single lode, having a single, broad outcrop or apex. But, be this as it may, we think that upon the state of facts disclosed by the present record, together with all the legitimate inferences that might be drawn therefrom, the jury would not have been warranted in finding that the defendant company held the apex of an independent vein, which in its descent united with and became an integral part of the Aliunde vein. We are of the opinion that a finding of that nature, based upon the evidence which is before this court, would have rested upon no substantial foundation, and could not have been sustained. The trial court committed no error, therefore, in withholding that issue from the jury. Marshall v. Hubbard, 117 U. S. 415, 419, 6 Sup. Ct. Rep. 806, and citations.

Finally, we must correct the false impression which counsel seem to entertain, that we have misconceived or failed to consider the question intended to be presented by the twelfth and thirteenth instructions. We fully understood counsel to contend that the Colorado Central Company, by virtue of its prior location, could lawfully lay claim to all ores within its side lines and end lines, which formed

a part of the lode on which its location rested, even though the apex of such lode in the course of its strike to the southwest had eventually crossed into the Aliunde territory, and had been there discovered and located upon by the proprietor of the latter claim. We intended to overrule that contention, and we think we did do so with sufficient certainty in our previous decision. It is true that we made some reference to the vein having "forked as it entered the disputed territory," but in using that expression we merely referred to a theory which was stated in the original brief filed by counsel for the plaintiff in error. In so far as the application of the rule of law which we announced is concerned, it is obviously immaterial whether the lode became divided as it entered the disputed territory or did not so divide. In either event, we think it follows that, as the Colorado Central claim had been laid rather obliquely to the general course of the outcrop, the owners of that claim lost the vein when they lost the outcrop. This view was distinctly enunciated in our previous decision, the authorities were cited on which we predicated our opinion, and we find nothing in the petition for a rehearing which is calculated to change our views. In conclusion, it may not be out of place to remark that the question whether a locator on the dip of a vein may be ousted by a subsequent locator on the apex, assuming both claims to be laid side by side and "along the vein or lode," does not seem to be presented by the record now before us, and we have expressed no opinion on that point. It follows from what has been said that no sufficient cause has been shown for further argument, and the petition for a rehearing is accordingly denied.