Sullivan and Stewart, JJ., concur.

———

(May 3, 1913.)

## STEWART MINING CO., Appellant, v. ONTARIO MINING CO. et al., Respondents.

[132 Pac. 787.]

DECISION OF COURT—MINES AND MINERALS—LOCATION ALONG VEIN OR
LODE—DISCOVERY VEIN—PRESUMPTIONS DRAWN FROM PATENT—
APEX OF CLAIM—EXTRALATERAL RIGHTS—WHEN END LINES BE-
COME SIDE LINES—DOWNWARD COURSE—EVIDENCE MUST BE CLEAR
—DECREE QUIETING TITLE.

1. Under the statute of this state, sec. 4406, Rev. Codes, the decision of the trial court consists of the findings of fact and conclusions of law which must be in writing and filed with the clerk. An oral opinion announced by the court from the bench prior to making of findings of fact and conclusions of law, or a written opinion addressed to counsel which is not in the nature of findings and conclusions, is not the decision of the court, and exceptions taken thereto and assignments of error directed against such an opinion are not assignments against the decision of the court, and will not call for a review thereof on appeal.

2. The statute of the United States, sec. 2322, grants to the locator of a mining claim the exclusive right of possession and enjoyment of "all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations," and the words "top or apex" as there used mean the highest point in the vein. An apex must be the top or terminal edge of the vein on the surface or the nearest point to the surface, and must be the top of the vein proper rather than of a spur, and must be a point from which the vein has a dip as well as a strike.

3.  The words "downward course" and "course downward," contained in sec. 2322 of the United States statutes, are used interchangeably, and were evidently intended to signify the course of the vein from the surface toward the center of the earth whether in a perpendicular course or on a dip or declination, and by downward course is meant a course more in the direction of the dip of the vein than of the strike or onward course of the vein. To pursue a vein in the direction of its strike at an angle of less than 45 degrees to the course of such vein would clearly not be following the vein on its "downward course" as authorized by the statute, but would rather be following it on the course of its strike.

4.  The general rule that where a mineral vein or lode crosses the side lines of the location, as marked on the surface, such side lines are in law end lines, and that the lines that were laid off and marked as end lines are in law side lines, is subject to the exception that where the discovery vein does in fact cross the end lines of the claim as marked on the surface, and such end lines are the true end lines of the claim and the side lines are the true side lines of such claim, those lines will remain such for all secondary veins having their apices within the surface boundaries of such claim, and the fact that a secondary vein may be discovered crossing the side lines will not give the locator extralateral rights beyond the vertical plane of the end lines of the claim.

5.  In the absence of proof as to the course of the discovery vein on a patented mining claim, the existence of the patent to the claim raises the presumption that the location was laid along the course of the vein and that the vein or lode crosses the end lines of the claim as marked on the ground, and that the side lines thereof are laid in the direction of the strike or onward course of the vein.

6.  Where a mineral vein or lode has been cut off by a great and well-defined fault, and the end edge of the vein along the fault is left in such a position that if the fault were eroded or washed away the edge of the vein would stand out as an overhanging cliff with both a dip and a declination to the onward course of the vein of from 30 to 45 degrees, such edge of the vein is not the top or apex of the vein within the meaning and purview of sec. 2322 of the Revised Statutes of the United States. The fact that such end edge of the vein is at places curled, cupped or turned upward at varying angles from the general course or strike of the vein will not serve to convert such edges or spurs into an apex of the vein.

7.  One who claims the right to take ore bodies from beneath the surface boundaries of a mining claim not his own under and by reason of the extralateral rights provision of sec. 2322 of the Revised Statutes of the United States, on the ground that the vein

has its apex within the surface boundaries of his own location, should be required to prove clearly and satisfactorily to the court that he has the apex of such vein within the surface boundaries of his own location before being awarded the right to remove the ores from beneath the surface of the neighboring claim.

8. Under the statutes of this state, sec. 4538, an action to quiet title may be brought by any person against another who claims an estate or interest in any real property adverse to him, for the purpose of determining such adverse claim, and it was not error for the trial court to render and enter judgment in this case enjoining the appellant from "asserting any right, title or interest of, in or to the said Ontario mining claim or the ores or minerals therein adverse to the defendant Ontario Mining Co."

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

Action for injunction and accounting. Cross-complaint to quiet title. Judgment for defendant. Plaintiff appealed. *Affirmed.*

Wm. E. Cullen, Featherstone & Fox and M. S. Gunn, for Appellant.

The lower court erred in deciding that because the vein crosses the southerly side line of the Stewart Fraction claim, that line is in fact an end line, in consequence of which the appellant is not entitled to any extralateral right to the vein southerly of the vertical plane of such line.

The presumption obtains that a discovery was made in the Stewart Fraction claim, and that the claim was properly located with reference to the discovery vein. In other words, as there is neither allegation nor proof with reference to the discovery vein in the Stewart Fraction claim, it will be presumed that the side lines and end lines of the claim are as described in the patent. (*Work Min. & Milling Co. v. Dr. Jack Pot Mining Co.*, 194 Fed. 620; *Del Monte M. & M. Co. v. Last Chance M. & M. Co.*, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. ed. 72, 19 Morr. Min. Rep. 370; *Calhoun Gold Min. Co. v. Ajax Min. Co.*, 182 U. S. 499, 21 Sup. Ct. 885, 45 L. ed. 1200, 21 Morr. Min. Rep. 381.)

The end lines of the claim which determine the extra-lateral right to the discovery vein are the end lines as to all other veins, the apices of which are within the claim. (*Walrath v. Champion Min. Co.*, 170 U. S. 293, 18 Sup. Ct. 909, 43 L. ed. 170, 19 Morr. Min. Rep. 410; *Del Monte Case, supra;* Lindley on Mines, 2d ed., sec. 591; *Consolidated Wyo. G. M. Co. v. Champion Min. Co.*, 63 Fed. 540, 18 Morr. Min. Rep. 113.)

The lower court erred in holding that the termination of the vein along the Osborne fault within the Stewart Fraction claim is not the top or apex thereof.

If the course is downward along lines parallel with the vertical planes of the end lines, it is wholly immaterial that the course is more along the strike than on the dip of the vein. (Lindley on Mines, 2d ed., pp. 576, 577; *Bunker Hill & Sullivan Mining Co. v. Empire State Mining Co.*, 134 Fed. 268; *Last Chance Mining Co. v. Bunker Hill & Sullivan Min. Co.*, 131 Fed. 579, 66 C. C. A. 299.)

The apex of the vein along the Osborne fault is a subsurface apex. Such an apex will support a location, and the extra-lateral right attaches to a vein having a subsurface apex the same as to a vein which outcrops at the surface. (*Flagstaff Silver Min. Co. v. Tarbet*, 98 U. S. 469, 25 L. ed. 253, 9 Morr. Min. Rep. 607; *Calhoun Gold Min. Co. v. Ajax Gold Min. Co., supra.*)

The fact that the vein on its downward course from the apex in the northerly portion of the Senator Stewart Fraction claim extends into and through the Stewart and Lazy Jean claims does not affect the extralateral right attaching to the vein beyond and southerly of the Senator Stewart and Lazy Jean claims. (*Empire State etc. Co. v. Bunker Hill & S. Min. Co.*, 114 Fed. 417, 52 C. C. A. 219, 22 Morr. Min. Rep. 104; Lindley on Mines, 2d ed., 532.)

The law should be applied to the vein as it is situated in the ground and not to a theoretical vein, and it is the course of the apex which controls and not the general course or strike of the vein. (*Mining Co. v. Tarbet, supra;* Lindley on Mines,

2d ed., p. 1005; *Carson City Gold Mining Co. v. North Star Mining Co.,* 73 Fed. 597.)

The edge or end of the vein along the Osborne fault is the top or apex within the meaning of these words as used in sec. 2322, U. S. Rev. Stats., and there is a downward course along this apex to the ore bodies in controversy. Every requirement of the statute necessary to the exercise of the extralateral right by appellant is fulfilled. To hold otherwise would do violence to the statute by imposing conditions which are not contained in it. This is not permissible, as held in *Calhoun Min. Co. v. Ajax Gold Min. Co., supra.*

The appellant discovered and developed this vein. The respondent, the Ontario Mining Company, took advantage of the discovery and development of the vein by appellant, and the ore it has been and is extracting from the vein beneath the Ontario the law intended should belong to the appellant as a reward for making a discovery of the vein. It is admitted that the apex to this vein is not within the Ontario claim, and it is conceded that the apex to at least a part of the vein is within the mining claims of the appellant. (Lindley on Mines, 2d ed., sec. 335.)

The court erred in deciding that the respondent is entitled to have its leasehold interest in the Ontario claim quieted as against any claim which is or may be asserted by the appellant, and in rendering judgment enjoining the appellant from ever "asserting any right, title or interest of, in or to the said Ontario mining claim or the ores or minerals therein adverse to the defendant." (*Keely v. Ophir Hill Con. Min. Co.,* 169 Fed. 601, 95 C. C. A. 99.)

Myron A. Folsom, John P. Gray and James E. Gyde, for Respondents.

The trial judge made certain oral remarks to which counsel take exception. These oral remarks do not constitute a decision within the meaning of the statute, and are not part of it. (*Hamilton v. Spokane etc. Ry. Co.,* 3 Ida. 164, 28 Pac. 408.)

If we assume that the patent conclusively establishes that there is a discovery vein running from one end line to the

other, through the center of the claim, and that the end lines,. as described in the patent, are the end lines of all veins, and that a secondary vein on its course crosses the south side line of the Stewart Fraction Claim and runs substantially parallel with the end lines of the claim across the imaginary discovery vein to a point near the north side line of the claim, still the law would not give the owners of the Stewart Fraction claim the right to.pursue that vein on its strike beyond the south side line of the claim. (Lindley on Mines, 2d ed., sec. 594, p. 1049, fig. 84; *Cosmopolitan Min. Co. v. Foote,* 101 Fed. 518, 20 Morr. Min. Rep. 497; Costigan on Mining Law, p. 448.)

The lower court did not err in holding that the termination of the vein along the Osborn fault within the Stewart Fraction claim is not the top or apex thereof. (Lindley on Mines, 2d ed., secs. 305–312; Costigan on Mining Law, p. 105; *Duggan v. Davey,* 4 Dak. 110, 26 N. W. 887, 17 Morr. Min. Rep. 59; *Flagstaff Min. Co. v. Tarbet,* 98 U. S. 463, 25 L. ed. 253, 9 Morr. Min. Rep. 607; *Del Monte Min. Co. v. Last Chance Min. Co.,* 171 U. S. 55, 65, 18 Sup. Ct. 895, 43 L. ed. 72, 19 Morr. Min. Rep. 370.)

The right to follow the dip outside of the side line is based upon the hypothesis that the direction of these lines corresponds substantially with the course of the lode or vein at its apex, on or near the surface. It was not the intention of the law to allow a person to make his location crosswise of the vein, so that the side lines shall cross the vein, thereby giving him the right to follow the strike of the vein outside of his side lines. That would subvert the whole system sought to be established by law. (*Flagstaff Min. Co. v. Tarbet, supra; Del Monte Min. v. Last Chance Min. Co., supra.* See, also, *Argentine Co. v. Terrible Min. Co.,* 122 U. S. 478, 7 Sup. Ct. 1356, 30 L. ed. 1140, 17.Morr. Min. Rep. 109.)

In the case of *Southern Nevada. Gold & Silver Min. Co. v. Holmes,* 27 Nev. 107, 103 Am. St. 759, 73 Pac. 760, the defendant had a claim which was so located that it could sweep the country very much as the Stewart Fraction claim would be allowed to sweep southerly if the east and west portion

of its so-called apex should be adjudicated to be a part of the apex and if the court should further find that they could follow upon the strike.

In the *Horseshoe Case* (*Iron Silver M. Co. v. Elgin Min. etc. Co.*), 118 U. S. 196, 6 Sup. Ct. 1177, 30 L. ed. 98, 15 Morr. Min. Rep. 641, the owner of a claim which contained no part of the apex of a vein was awarded the ore beneath his surface as against the owner of the claim which contained the apex of the vein, who had so located that apex that he could not follow the vein extralaterally in the direction of the ores in controversy or in any other direction. (*Consolidated Wyo. G. M. Co. v. Champion Co.*, 63 Fed. 540, 18 Morr. Min. Rep. 113; *St. Louis Co. v. Montana Co.*, 194 U. S. 235, 24 Sup. Ct. 654, 48 L. ed. 953.)

The court did not err in entering a decree quieting the title of the Ontario company. (*Lawson v. United States Mining Co.*, 207 U. S. 1, 28 Sup. Ct. 15, 52 L. ed. 65; *Last Chance Co. v. Bunker Hill Co.*, 131 Fed. 579, 66 C. C. A. 299.)

AILSHIE, C. J.—This action was commenced by the appellant for the purpose of securing an accounting and for judgment for the value of ore and mineral extracted and removed by the respondents from certain veins and ore deposits beneath the surface of the Ontario mining claim, and for an injunction *pendente lite,* and for a permanent injunction restraining defendants from further working these ore bodies or removing ore therefrom. Application was made to the trial court for an injunction pending the trial of the action, and that application was denied and an appeal was prosecuted to this court. The order of the trial court was affirmed (*Stewart Min. Co. v. Ontario Min. Co., ante,* p. 280, 129 Pac. 932). The case thereafter went to trial in the district court in and for Shoshone county on the complaint of the plaintiff and answer and cross-complaint on the part of the defendant and an answer by the plaintiff to defendant's cross-complaint. Findings of fact and conclusions of law were subsequently made and filed and judgment was thereupon entered denying the

plaintiff any relief and quieting the title of the defendant in and to the ore bodies in question.

The appellant is the owner of the Senator Stewart Fraction lode mining claim and holds a patent from the United States for the same. Jonathan Bourne, Jr., of Portland, Or., is the owner of the Ontario lode mining claim, and the Ontario Mining Co., an Idaho corporation, is the lessee thereof and is in the possession of the same working and extracting ores therefrom. These two mining claims are not adjoining or contiguous claims, but are in close proximity to each other. Plaintiff's exhibit No. 3 is a surface map which has been introduced in evidence in this case, and illustrates the relative positions of these claims and also the strike and dip of the vein in the Senator Stewart Fraction as well as the apex claimed by appellant for this vein. The following is a copy of this exhibit:

The court found that the plaintiff has no right, title or interest in or to the ore bodies in question within the exterior boundaries of the Ontario claim. Paragraphs 8, 10, 11, 12, 13, and 14 are the material findings essential to be considered on this appeal, and we therefore set them out in full as follows:

"8. That no part of the apex of the said ore bodies lies within the lines of the Senator Stewart Fraction lode mining claim.

"10. That within said Senator Stewart Fraction lode mining claim there is a vein or lode of mineral-bearing rock in place which on its onward course crosses the south side line of said Senator Stewart Fraction lode mining claim, and has a course about north 30 degrees east, and the said vein on its onward course does not reach any other line of said claim. That the said vein is cut off on its onward course by a large fault near the north line of said claim, called the Osborne fault in this case. That the said vein on its downward course passes underneath the east line of said claim, which is described in the patent as the end line of said claim, which line connects corners 1 and 2 of said claim. That the fault which cuts off said vein on its northerly end has a northwestwardly and southeastwardly course and dips southwestwardly. That the end of the vein against said fault has a course north 41 degrees west. That the end of said vein against said fault has a steeply inclined downward course southeasterly.

"11. That the end of the vein as the same is terminated on the onward course of the said vein against the fault hereinbefore referred to is the end of the vein on the line of its dip, and the said vein is undercut by the said fault in such manner that if the country below the fault was eroded, it would present the appearance of an overhanging cliff.

"12. That the said fault which terminates the said vein upon its onward course is a fault of great magnitude, and for a short distance above the fault has disturbed and broken and slightly deformed the vein, and inclosing rocks in close proximity to said fault in some places for a greater distance from the fault than in others. That the vein is also at various

places cut by other faults which tend in places to flatten the
vein somewhat upon its downward course.

"13. That the said vein is continuous on its onward course
from the line of contact with the said great fault, in this case
called the Osborne fault, southerly to the ore bodies within
the Ontario lode mining claim and has been followed upon the
level in the drifts by the miners from the said edge of the vein
to the ore bodies in the Ontario mining claim.

"14. That the top or apex of said vein which on its onward
course crosses the south side line of said claim is practically
level."

A great many maps and models have been introduced in
evidence and have been submitted for our consideration.   De-
fendants have submitted a model showing the course and dip
of the vein as it extends through both the Stewart Fraction
claim and the Ontario, and illustrating all the underground
workings, including all tunnels, shafts, drifts, cross-cuts,
stopes, winzes, etc., and also showing the Osborne fault where
it cuts off the vein.   A photographic view of this model will
be incorporated herein as an aid to an understanding of such
of the evidence as we may refer to hereafter.   The section
shown on the right of this view extending northwest and
southeast represents the Osborne fault, and the Frank and
Gray stopes are beneath the surface of the Ontario claim, and
the Osborne fault as here shown is within the Stewart Frac-
tion:

There seems to be really no serious contention as to the sufficiency of the evidence to support these findings, except as to the finding with reference to the apex of the vein within the Stewart Fraction and the apex of the ore bodies within the Ontario claim in which the appellant claims the ownership, and that is more a difference of conclusion than of probative fact. The controversy here involved resolves itself more to a proper application of the rules of law governing extralateral rights to lode mining claims than to any serious conflict over the facts of the case.

The evidence in this case, it seems to us, is abundantly sufficient to show the following facts: That the vein to which appellant claims extralateral rights extends in a northeasterly and southwesterly course, and that its course is about north thirty degrees east. This vein crosses the south side line of the Stewart Fraction at about right angles. It extends to within about 100 feet of the north side line of the Stewart Fraction and is there cut off in its onward course or strike by what is known throughout that mining section as the "Osborne fault." This fault is some miles in width and extends lengthwise for a number of miles across the country and is not peculiar to this vein alone, but is well known by miners and prospectors throughout that mining region. This fault has a course from southeast to northwest and bears about 41 degrees west of north. The dip of this fault is southwestwardly. Of this fault and the effect it had on the end of the vein where it cut the same off on its onward course, Mr. Lawson, Professor of Geology in the State University of California, who testified in the case, said:

"Following the level along the general strike of the vein in a northeasterly direction, the vein terminates against a fault, and it has not been discovered as far as I am aware— I at least have not seen it beyond that fault, but the fault is the one which has been referred to in this case frequently as the Osborne fault. The Osborne fault is a fault of very considerable magnitude, and of great extent, which has been mapped by the geological survey in its publications in this district, but I do not vouch for the correlation of this fault

with the fault as determined by the geological survey as the Osborne fault; I think there may be some doubt about that, but there is no doubt about the fact that there is a great fault here, against which the vein in its general strike abuts and stops, constituting an end to the vein in that direction. Now, the abutment of the vein upon the fault that I have referred to occasioned a local disturbance in the trend of the vein, and that deformation,—that local deformation or disturbance in the vicinity of the fault is one which may be expected to occur in such a situation. It is, however, a feature of the vein which is abnormal; it is not the regular or normal condition of the vein, particularly as regards its strike. We have a normal condition manifested in the general trend of the drift along the strike of the vein, and when we come in the vicinity of that fault we encounter an abnormality, that is to say, the strike is deflected from its normal course so that in taking into account the strike of the vein, we cannot select the small relatively insignificant portion of the vein which is just deformed by its abutment on the fault, and not take into account the larger amount that extends far beyond that deformation to the southwest.''

It is further shown by some of the experts that this vein at the edge where it is cut off along the Osborne fault is at various places *turned, curled,* or *cupped upward,* caused by the disturbance which created the fault and cut off the vein. It further appears that this vein is undercut by the Osborne fault in such a manner that if the fault were eroded or washed away, it would leave the vein standing out as an overhanging cliff. The dip of this vein to the southeast and at right angles to the strike is perhaps about 40 degrees; some witnesses say about 30 while others place it at 40 or 50 degrees.

The Stewart Fraction is a patented mining claim, and it seems to be conceded that the discovery upon which the location was made and patent procured was not upon this vein. The evidence does not disclose the course of the discovery vein or lode in the Stewart Fraction. At the close of the trial and prior to making findings of fact and conclusions of law, and,—I presume from the bench,—the court announced his

purpose to decide the case in favor of the defendants, and said:

"In this case of the Stewart Mining Co. against the Ontario, I have paid very close attention during the trial, and very considerable thought and investigation since. I have determined in favor of the defendant in this action. There may be some little dispute about the apex of that vein, but there is no question in my mind as to its course, and there is no question in my mind as to the law of the case. I have a settled conviction, which it would take a decision of the supreme court of the United States to remove, that when a vein crosses the side line on its course, that that side line becomes an issue and that it is the end line of that claim where it crosses, whether it crosses both end lines or not, and it is upon that ground chiefly that I award the decision to the defendants."

Appellant assigns as error that part of this statement of the court wherein he held that the southerly side line of the Stewart Fraction claim is in fact an end line, and in consequence thereof the owner is not entitled to any extralateral right to the veins southerly of the vertical plane of such line. We shall have occasion hereafter in this opinion to refer to the principle of law here involved, but for the purposes of disposing of this assignment of error it is sufficient to say that under the statutes of this state and the rule of law frequently announced by this court these remarks or observations of the trial court were no part of the decision of the court. The decision consists of the findings of fact and conclusions of law which must be in writing and filed with the clerk. (Sec. 4406, Rev. Codes; *Hamilton v. Spokane etc. Ry. Co.,* 3 Ida. 164, 28 Pac. 408; *Caldwell v. Wells,* 16 Ida. 463, 101 Pac. 812.)

The important and decisive assignment of error is lodged against the finding of the court that the termination of the vein in the Stewart Fraction along the Osborne fault is not the top or apex of the vein. There is some difference among the witnesses as to the inclination and apparent strike of the vein at certain points in this edge where it is curled up along the Osborne fault, but, taken as a whole, the evidence

supports the findings, and the controversy arising on this appeal becomes a question as to the correct interpretation and application of the rule of law that should apply to the facts of this case.  The whole question rests on the correct application of the apex and extralateral rights provisions of sec. 2322, U. S. Revised Statutes.  In applying this statute, we have no intention whatever of attempting any new construction of the statute or of making any new application of its provisions. This case may readily be decided upon the constructions and interpretations which have heretofore been had by the court of last resort, and we shall content ourselves with discovering and applying the rules which that court has enunciated.

The definitions of the word "apex" as used in the statute (sec. 2322, U. S. Rev. Stats.) all reach the one inevitable conclusion that it is the highest point in the vein (*Flagstaff Silver Min. Co. v. Tarbet*, 98 U. S. 469, 25 L. ed. 253, 9 Morr. Min. Rep. 607; Lindley on Mines, 2d ed., secs. 305, 309; Costigan on Mining Law, p. 137, sec. 35; *Duggan v. Davey*, 4 Dak. 110, 26 N. W. 887, 17 Morr. Min. Rep. 59; *Del Monte Min. Co. v. Last Chance Min. Co.*, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. ed. 72, 19 Morr. Min. Rep. 370), but this is only a general definition, and its application to any particular vein or peculiar location may and often will call for further particularity of description.  It must be the top or terminal edge of the vein on the surface or the nearest point to the surface, and it must be the top of the vein proper rather than of a spur or feeder, just as the highest point in the roof of a house would be taken to be the apex of the house, and not the chimney or flagstaff.  Again, an apex is a point from which the vein has a dip as well as strike or course else it confers no extralateral right.  (Costigan, Mining Law, p. 414; *Gilpin v. Sierra-Nevada Con. Min. Co.*, 2 Ida. 696 (662), 23 Pac. 547, 1014, 17 Morr. Min. Rep. 310.)

Appellant lays great stress on the words "downward course" as employed in the statute (sec. 2322), and counsel have devoted many pages of their brief to a discussion of the authorities which treat of this subject.  In this statute the words "downward course" and "course downward" are used

interchangeably, and it was undoubtedly intended by the use of the words to signify the *course* of the vein *from the surface toward the center of the earth.* Sometimes it may happen that the "downward course" of a vein will be perpendicular and the vein will form a vertical plane, but, as a rule, there is a deflection in the downward course of these mineral veins from the perpendicular, and we call this their dip, but still the course of the dip is always "downward," and when the plane of the vein reaches the horizontal, then we have a blanket vein or lode, and on such a vein a locator has no extralateral right. (Costigan, Mining Laws, 414, and authorities there cited. See 1 Lindley, secs. 300 and 311.)

Some confusion has obtruded into this case through an attempt to extend the language of the courts in *Bunker Hill & Sullivan M. & C. Co. v. Empire State etc. Co.,* 134 Fed. 268, and *Last Chance Mining Co. v. Bunker Hill & Sullivan M. & C. Co.,* 131 Fed. 579, 66 C. C. A. 299, to an unwarranted length. The suggestion contained in those cases that it makes no difference whether the vein be followed more on the *dip than the strike,* provided it be "between vertical planes drawn downward through its adjudicated end lines," is not the vital holding or ruling of the court in either case, and as we understand the decisions of the supreme court, does not find unqualified support in any of the decisions of that court. The supreme court always qualifies its holdings in this respect by *the condition of the statute* that the *course* between *those vertical planes must be downward.* So far as we are aware, the authorities are quite uniform in holding that the extralateral right awarded by the statute (sec. 2322) must in all cases be pursued more upon the dip than the strike of the vein,—more upon the *downward* than upon the *onward* course of the vein. To pursue a vein in the direction of its strike at an angle of less than 45 degrees to the course thereof would clearly not be following the vein on its "downward course" as authorized by the statute.

Mr. Lindley, in vol. 2, 2d ed., of his work on Mines, at sec. 589, summarizes the rule as follows: "So the downward course of the vein which may be followed in the exercise of

the extralateral right is not necessarily at right angles to the strike or true course. It is that direction which the vein takes underneath the surface, on its downward course, between vertical planes drawn through the end lines, or the side end lines, as the case may be. This gives a segment in length, throughout the depth, within vertical planes drawn through the parallel crossed lines, equal to the length of apex covered by the surface boundaries, measured, of course, on lines on the plane of the vein, which necessarily would be, save for possible 'warping' or local curving, parallel to the course of the apex.'' (*Duggan v. Davey*, 4 Dak. 110, 26 N. W. 887, 17 Morr. Min. Rep. 59. See, also, *Gilpin v. Sierra-Nevada Con. Min. Co.*, 2 Ida. 696 (662), 23 Pac. 547, 1014, 17 Morr. Min. Rep. 310.)

It is clear to us from the wording of the statute and the reasoning of the opinions that there can be no extralateral right on the strike of the vein. (*Argentine Min. Co. v. Terrible Min. Co.*, 122 U. S. 478, 7 Sup. Ct. 1356, 30 L. ed. 1140, 17 Morr. Min. Rep. 109; *Southern Nevada Gold & S. Min. Co. v. Holmes Min. Co.*, 27 Nev. 107, 103 Am. St. 759, 73 Pac. 759; *Colorado Cent. Consol. Min. Co. v. Turck*, 50 Fed. 888, 2 C. C. A. 67; *McCormick v. Varnes*, 2 Utah, 355; *Tombstone Mill & Min. Co. v. Way Up Min. Co.*, 1 Ariz. 426, 25 Pac. 794; *Larned v. Jenkins*, 113 Fed. 634, 51 C. C. A. 344, 22 Morr. Min. Rep. 94; Costigan, Min. Law, p. 414.)

Now, there is no doubt in the present case about the vein crossing the southerly side line of the Stewart Fraction at about right angles to that line. If this were the Stewart Fraction discovery vein or lode, its course or strike clearly would convert this side line into an end line, and the end lines of the location on the ground would become side lines. (*Flagstaff Silver Min. Co. v. Tarbet*, 98 U. S. 469, 25 L. ed. 253, 9 Morr. Min. Rep. 607; *Del Monte Min. Co. v. Last Chance Min. Co.*, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. ed. 72, 19 Morr. Min. Rep. 370; *Iron Silver Min. Co. v. Elgin Min. & S. Co.*, 118 U. S. 196, 6 Sup. Ct. 1177, 30 L. ed. 98, 15 Morr. Min. Rep. 641; *Argentine Min. Co. v. Terrible Min. Co.*, 122 U. S. 478, 7 Sup. Ct. 1356, 30 L. ed. 1140, 17 Morr. Min. Rep.

109; *King v. Amy & S. Consol. Min. Co.*, 152 U. S. 222, 14 Sup. Ct. 510, 38 L. ed. 419, 18 Morr. Min. Rep. 76.) It was undoubtedly this line of authorities that the trial court had in mind when announcing his oral opinion prior to making his findings of fact and conclusions of law, and it is clear beyond doubt that if the southerly side line of the Stewart Fraction may be regarded as a side end line, that this conclusion alone would be decisive against appellant. In that view of the matter, appellant could not pass beyond this end line southerly, and its only extralateral right would be easterly between the extended parallel vertical planes of its side end lines. (*Flagstaff Silver Min. Co. v. Tarbet, supra; Del Monte M. & M. Co. v. Last Chance M. & M. Co., supra; Walrath v. Mining Co.*, 171 U. S. 306, 18 Sup. Ct. 909, 43 L. ed. 177, 19 Morr. Min. Rep. 410.)

There is only one consideration which can possibly prevent treating the southerly side line of the Stewart Fraction as an end line in measuring appellant's right to pursue the vein beyond the exterior boundaries of its location, and that is the rule announced in *Iron Silver Min. Co. v. Elgin M. & S. Co.*, 118 U. S. 196, 6 Sup. Ct. 1177, 30 L. ed. 98, 15 Morr. Min. Rep. 641; *Last Chance Min. Co. v. Tyler Min. Co.*, 157 U. S. 683, 15 Sup. Ct. 733, 39 L. ed. 859, 18 Morr. Min. Rep. 205, *Walrath v. Champion Min. Co., supra,* and *Del Monte v. Last Chance Min. Co., supra,* that the course of the primary or discovery vein definitely determines the end lines and side lines for all veins having their apices within the exterior boundaries of the location. (See Costigan on Mines, p. 448; Snyder on Mines, sec. 885; *Cosmopolitan Min. Co. v. Foote*, 101 Fed. 518, 20 Morr. Min. Rep. 497.) In other words, the courts have held that the locator of a mining claim cannot treat the end lines of his location as the true end lines for the purpose of one vein having its apex within the surface boundary of the claim and pursue his extralateral rights on that vein in one direction, and then claim that those same end lines are side lines with reference to another vein having its apex within the surface boundaries of the location, so as to enable him to pursue his extralateral right on the secondary

vein in substantially the same direction as the course or strike of his primary or discovery vein.

It is claimed by appellant that the Stewart Fraction, being a patented claim, and the vein in controversy for which extralateral rights are asserted not being the discovery or primary vein, and there being no evidence as to the course or strike of the discovery vein, we must assume that the surface location was made along the course of the vein (*Calhoun Gold Min. Co. v. Ajax Min. Co.*, 182 U. S. 499, 21 Sup. Ct. 885, 45 L. ed. 1200, 21 Morr. Min. Rep. 381; *Work Min. & Mill Co. v. Dr. Jack Pot Mining Co.*, 194 Fed. 620; *Enterprise Min. Co. v. Rico-Aspen Consol. Min. Co.*, 167 U. S. 108, 17 Sup. Ct. 762, 42 L. ed. 96, 18 Morr. Min. Rep. 661; *Ajax Gold Min. Co. v. Hilkey,* 31 Colo. 131, 102 Am. St. 23, 72 Pac. 447, 62 L. R. A. 555, 22 Morr. Min. Rep. 585), and that the end lines cross the discovery vein and become the end lines for all veins having their apices within the surface boundaries of the location. In the absence of proof as to the course of the discovery vein, this presumption undoubtedly arises, but it is doubtful if it has any application in a case where no question arises over any fact, the existence of which was essential to secure the patent, or where the action in no way involves the *discovery vein* or the right of the locator to pursue it in any manner or direction, and the party against whom the presumption is invoked was not a party or privy to the location or patent proceedings. But for the purposes of this case, we shall proceed on the theory that a legal presumption arises from the issuance of patent to the Stewart Fraction that the end lines as established on the ground are the true end lines for all the purposes of this case. If, then, the edge of the vein along the Osborne fault would meet the requirements of the statute as the apex of a vein, appellant would doubtless be entitled to pursue this vein beyond the vertical plane of its south side line as long as it could do so on the downward course of the vein. Under no rule or definition to which our attention has been called can the end edge of the vein along the Osborne fault be treated as an apex of the vein and ore bodies here in question which are being worked beneath the

surface boundaries of the Ontario. We cannot understand how an overhanging end edge of a vein, cut off as the evidence shows this has been, can in any sense be called the top or apex of the vein. In our opinion, there is much slighter reason for holding this an apex than there was for holding the side edge of the vein in the Sitting Bull location an apex, which is discussed so tersely and clearly in *Duggan v. Davey,* 4 Dak. 110, 26 N. W. 887, 17 Morr. Min. Rep. 59, and to which Mr. Lindley refers as being ''one of the most interesting and instructive of all the adjudicated cases involving the interpretation of the terms 'top' or 'apex.' '' (1 Lindley, 2d ed., sec. 310.) Yet in that case the court denied the Sitting Bull any extralateral rights, on the ground that it had no apex within its exterior boundaries.

Counsel for respondent have incorporated in their brief a diagram showing the Sitting Bull location and line of vein exposure, and the Stewart Fraction and vein, for purposes of comparison, and we are appending it herein for the purpose of showing the similarity between the two veins in the matter of strike and dip:

[DIAGRAM "B"

The maps and models introduced all tend to support the contention that any pursuit of this vein by appellant beyond the south side line of the Stewart Fraction along a line parallel to the vertical plane of its east end line would be about horizontal rather than downward. This brings us to a principle of law which has been recognized or in some respect adverted to in some of the extralateral rights cases, to the effect

that one who claims such a right and seeks to take ore bodies from beneath the surface boundaries of another location must prove clearly and satisfactorily that he has the apex of the vein or lode within the surface boundaries of his location and that he is pursuing the vein on its "downward course." (*Consolidated Co. v. Champion Co.*, 63 Fed. 540, 18 Morr. Min. Rep. 113; *St. Louis Co. v. Montana Co.*, 194 U. S. 235, 24 Sup. Ct. 254, 48 L. ed. 953; *Duggan v. Davey, supra.*) Where the evidence is doubtful and uncertain, the court ought to decline its aid to one who is invoking its decree in order to enable him to pass beyond his own side lines and remove ore bodies from beneath the location of another. Here, too, the Ontario is the senior location by many years, and before a junior location may interfere with ore deposits under the surface of the senior location, the grounds on which the right is asserted ought to be made very clear.

Some suggestion has been made in the briefs to the effect that the Stewart company discovered and developed this vein, and that the Ontario company thereafter took advantage of appellant's discovery and development of the vein and thereupon prosecuted the work within the planes of their own boundary lines so as to tap this ore body and extract and remove it from the claim, and that the Ontario company is in fact profiting from the discovery made by the Stewart company. The evidence discloses that the principal ore bodies in the Ontario have been opened up and worked by the Ontario company through what is known as the Silver King adit or tunnel, for a half interest in which the Ontario company paid the appellant herein the sum of $10,000, and it was known and understood at the time of this purchase that the purpose of procuring the right to use the tunnel was to develop, open up and work the ore bodies in the Ontario claim. This tunnel transaction would in no way preclude or determine any legal right which appellant had to pursue a vein beneath the surface of the Ontario claim, but it does in a measure refute the charge of bad faith which has been suggested by appellant. It might be said, with equal support

from the record, that the appellant never thought of having any extralateral rights beneath the surface of the Ontario claim until after the Ontario company opened up and developed large and rich ore bodies in that claim.

Lastly, appellant complains of that part of the judgment of the court which enjoins and restrains appellant from ''asserting any right, title or interest in or to the said Ontario mining claim or the ores or minerals therein, adverse to the Ontario mining company.'' The appellant was the owner of the Switchback claim shown on the first diagram herein, and it now claims that this decree prejudices the Stewart mining company from subsequently asserting an apex right to this vein in the Switchback claim, and that no decree should have been entered which would in any way affect their rights under the Switchback location. The Ontario company filed a cross-complaint, and, among other things, alleged and charged that the Stewart mining company had no right whatever in or to the ore bodies beneath the surface of the Ontario location, and asked that the Stewart company be required to come in and set up whatever right or claim it might have by reason of any of its locations to the ore bodies beneath the surface of the Ontario location. To this cross-complaint the appellant herein answered, setting up its rights under the Switchback location, and that the Switchback is adjacent to and situated easterly of the Senator Stewart Fraction claim, and that it is also adjacent to and situated northerly of the Ontario location. It then alleged ''That the vein or lode hereinbefore described, the apex of which is within the Senator Stewart Fraction quartz lode mining claim, extends on its strike into said Switchback mining claim, and the apex thereof is within the boundaries of said Switchback mining claim and follows an easterly direction along said claim for a considerable distance, and said vein has a downward course from said apex in a southerly direction and toward said Ontario mining claim. That said vein and the apex thereof within said Switchback claim have not been explored or developed sufficiently to determine the extent to which said vein and the

apex thereof are within said Switchback claim, or the depth to which said vein extends in its downward course.''

Evidence was introduced showing that this vein at the end edge along the Osborne fault passes beneath the westerly end line of the Switchback upon the same inclination of its general dip along that fault. It is also shown that a drift was driven from the Switchback into these same ore bodies in the Ontario. While the Switchback has not been worked to any extent, the evidence in this case shows clearly the course and dip of the vein, and if the northerly end edge of this vein along the Osborne fault did not constitute an apex within the surface boundaries of the Stewart Fraction, it does not constitute an apex within the boundaries of the Switchback, and the appellant could not recover under its Switchback location for the same reason that it cannot recover under the Stewart Fraction location.

Again, in the answer to the cross-complaint, as above quoted, it was alleged that this vein passed through the Switchback in an easterly direction on the course of its strike. As we have above set forth, the strike of this vein is not easterly or southeasterly as claimed by appellant, but it is southerly, and so for this reason they could not recover under the right to pursue this vein into the Ontario under the Switchback location.

We think the court properly entered its decree quieting respondent's title as well against the Switchback location as against the Stewart Fraction location. (*Lawson v. United States Min. Co.,* 207 U. S. 1, 28 Sup. Ct. 15, 52 L. ed. 65; *Last Chance Co. v. Bunker Hill Co.,* 131 Fed. 579, 66 C. C. A. 299.)

Under the statute of this state, sec. 4538, Rev. Codes, an action to quiet title may be brought by any person against another who claims an estate or interest in any real property adverse to him, for the purpose of determining such adverse claim. (*Fry v. Summers,* 4 Ida. 424, 39 Pac. 1118; *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784; *Shields v. Johnson,* 10 Ida. 476, 79 Pac. 391, 3 Ann. Cas. 245; *Coleman v. Jaggers,* 12 Ida. 125, 118 Am. St. 207, 85 Pac. 894; *Wilson v. Linder,* 18 Ida. 444, 138 Am. St. 213, 110 Pac. 274.)

The judgment of the trial court should be affirmed, and it is so ordered, with costs in favor of respondent.

Sullivan and Stewart, JJ., concur.