726 P.2d 766

**SUNSHINE MINING COMPANY, formerly a Washington corporation and now a Delaware corporation, Plaintiff-Appellant,**

v.

**METROPOLITAN MINES CORP., LIMITED, an Idaho corporation, Defendant-Respondent.**

**No. 15653.**

Supreme Court of Idaho.

Sept. 25, 1986.

John S. Simko, Boise, James P. Keane, and Fred M. Gibler, of Evans, Keane, Koontz, Boyd & Ripley, Kellogg, for plaintiff-appellant.

Eugene L. Miller, of Miller & Miller, Coeur d'Alene,. Donald R. Kunz, of Kunz & Waugh, Phoenix, Arizona, for defendant-respondent.

DONALDSON, Chief Justice.

Sunshine Mining Company (Sunshine) and Metropolitan Mines Corporation (Metropolitan) own contiguous mining claims in the Coeur d'Alene Mining District in Shoshone County, Idaho. In the 1940s, Sunshine and Metropolitan entered into a total of three agreements. The first agreement—the 1941 Agreement—granted Sunshine a right-of-way through Metropolitan's property to explore, develop and mine any veins within Metropolitan's ground which might belong to Sunshine under the law of extralateral rights. The second agreement, which is not a part of the record, gave Sunshine a 20% undivided economic interest in Metropolitan's mineral rights and allowed Sunshine to explore and prospect Metropolitan ground through Sunshine's facilities and underground working for a six-year period beginning in January of 1941. That period was subsequently extended for two more years. The third agreement—the Yankee Girl Agreement—recognized and affirmed Sunshine's 20% interest and acknowledged discovery of a new vein—the Yankee Girl Vein. Sunshine claimed ownership of the Yankee Girl Vein pursuant to its extralateral rights. Metropolitan disputed Sunshine's claim.

Extralateral rights consist of the right to follow a vein outside the boundaries of one's own claim. Such rights were created and are governed by the Act of May 10, 1872, now codified as 30 U.S.C. § 26 (1971). Pursuant to that act, once it is established that the "apex" or top of a vein is within the boundaries of a particular claim, the locator or patentee of that claim is entitled to follow the vein on its downward course (dip) outside of the claim and onto the property of another so long as he remains within the extension of the end lines of his claim. *Silver Surprise, Inc. v. Sunshine Mining Company*, 15 Wash.App. 1, 547

P.2d 1240 (1976). *See generally* Introduction to Federal Mining Law § 30.05[7].

In an attempt to settle the controversy over the Yankee Girl Vein, the parties executed the Yankee Girl Agreement defining the vein and granting Sunshine an 84% ownership interest in it. Metropolitan also gave Sunshine a 30% interest in a group of claims located to the south of the Yankee Girl Vein. This was in addition to the 20% granted in the second agreement. Therefore, at the date of the commencement of this action, Metropolitan's mining claims were divided into three areas: a northerly area in which the ownership was Metropolitan 80%/Sunshine 20%; an intermediate area in which Metropolitan owned 16%/Sunshine 84%; and a southerly area where the ownership was equally divided: Metropolitan 50%/50% Sunshine.

With this background in mind, we arrive at the controversy underlying the present case. In the early 1970's, Sunshine discovered a vein of ore within its intralimital boundaries which it denominated the "Copper Vein." When development of the Copper Vein indicated it might dip into Metropolitan's property, Sunshine advised Metropolitan, by letter dated March 9, 1979, that it intended to enter into the boundaries of Metropolitan's claims to mine the vein. The letter stated that Sunshine claimed the right to mine the Copper Vein and retain all the profits therefrom pursuant to its extralateral rights. Metropolitan immediately responded that it would seek legal action should Sunshine enter its intralimital boundaries.

Sunshine then initiated the instant action by filing a complaint in district court on March 21, 1979. The complaint was framed in two counts. In Count I, Sunshine claimed ownership of the Copper Vein and all veins located 200 feet north of the Yankee Girl Vein and sought a declaratory judgment that Sunshine had a permanent right-of-way into Metropolitan's property under the terms of the parties' agreements. Count II sought a decree quieting title to the Copper Vein in Sunshine pursuant to its extralateral rights.

In its answer, Metropolitan acknowledged the existence of the 1941 and Yankee Girl Agreements but disputed Sunshine's ownership of any portion of the Copper Vein located within Metropolitan's property. Metropolitan also counterclaimed against Sunshine alleging violations of statutory anti-trust provisions and seeking $50 million in damages.

■ In October of 1979, Sunshine moved to amend its complaint. The proposed amendment eliminated the claim for quiet title and deleted all references to Sunshine's ownership of any specific veins or ore bodies. Metropolitan contested the motion contending that Sunshine had asserted an adverse claim to property within Metropolitan's intralimital boundaries, and that Metropolitan was therefore entitled to a decree quieting title against such adverse claim. Because the locator of a mining claim is presumed to own all the ore within the boundaries of his claim, one who asserts extralateral rights to a vein penetrating another's claim has the burden of proving that he has the apex of the vein within the surface boundaries of his location. *Silver Surprise, supra* at 5–6, 547 P.2d at 1244. *Stewart Mining Co. v. Ontario Mining Co.*, 23 Idaho 724, 742–43, 132 P. 787, 805–06 (1913). Thus, if Sunshine asserted extralateral rights within Metropolitan's intralimital boundaries, it would bear the burden of proving such rights.

Judge Towles granted the motion to amend by order dated January 8, 1980. He stated therein that he did not perceive any prejudice to Metropolitan because it had not sought to quiet title in itself by means of a counterclaim, but had merely denied Sunshine's right to quiet title. He further stated that Metropolitan could raise the issue in a counterclaim, and that the burden of proof would remain on Sunshine.

"At this stage of the proceeding the Court fails to see in what manner defendant would be prejudiced by such amendment. Metropolitan has not sought at this point to quiet title to the Copper Vein in its Answer and Counterclaim but has merely denied Sunshine's right.

Even in its proposed Amended Complaint plaintiff raises the extralateral rights issue, and under the circumstances of the filing of the original Complaint plus correspondence attached to the pleadings and the Amended Complaint it would appear to this Court that plaintiff has asserted an adverse claim based upon the issue of extralateral rights.

"Therefore, if defendant so chooses, it may well be in a position to raise the issue by virtue of amendment of its Answer and would very probably be in a position to claim that an adverse right has been asserted against it, and the burden of proof would be no different than if the issue had been raised by plaintiff."

Metropolitan then amended its answer asserting as an affirmative defense that Sunshine had made an adverse claim against its real property and seeking quiet title.

Both parties moved for summary judgment. The motions were denied on the ground that there was an issue of fact as to the existence of extralateral rights. On July 21, 1980, Metropolitan moved to dismiss its anti-trust counterclaim without prejudice which motion was granted. On February 2, 1981, Sunshine moved for voluntary dismissal. Metropolitan objected to Sunshine's motion and again moved for summary judgment.

Judge Towles denied the motion for summary judgment, stating that until such time as the parties proved that the Copper Vein did in fact dip into Metropolitan ground, there was nothing upon which a court decree could operate, and therefore the motion was premature. He held the motion for voluntary dismissal in abeyance, and granted Metropolitan 30 days to amend its pleadings to properly denominate its claim for quiet title as a counterclaim.

Metropolitan filed its counterclaim within the 30–day period. Therein, Metropolitan sought a decree quieting title to the Copper Vein within its intralimital boundaries against Sunshine's claim to extralateral rights in the vein. Metropolitan also sought $10 million in actual damages and

$20 million in punitive damages. On June 12, 1981, Sunshine filed both a motion to reconsider its previous motion for voluntary dismissal and a response to Metropolitan's counterclaim. The thrust of Sunshine's response was a denial that it had made any adverse claims against Metropolitan's property.

The matter lay dormant until October 3, 1983, when Metropolitan filed a motion for summary judgment on its counterclaim for quiet title to the Copper Vein. (Due to Judge Towles' retirement, this matter was assigned to Judge Prather on June 6, 1983.) Metropolitan based its claim for summary judgment on the fact that Sunshine's chief geologist testified in his third deposition on May 17, 1983, that it was his opinion that the Copper Vein did exist in Metropolitan ground. Metropolitan asserted that the only fact which had precluded the granting of the prior motion for summary judgment—the fact that there was no proof that the Copper Vein dipped into Metropolitan ground—had now been proven and that summary judgment was therefore appropriate.

On November 2, 1983, the parties agreed to the dismissal of Sunshine's amended complaint with the stipulation that Metropolitan's counterclaim remain pending before the court for independent adjudication. On May 29, 1984, Judge Prather entered his memorandum opinion and order granting Metropolitan's motion for summary judgment quieting title to the Copper Vein within Metropolitan's intralimital boundaries against any present or future claims by Sunshine. Sunshine appeals from that decision.

The central issue for resolution on this appeal is whether Sunshine's actions constituted a cloud on Metropolitan's title such that the district court was correct in quieting title to that portion of the Copper Vein within Metropolitan's intralimital boundaries in Metropolitan. It is undisputed that no one has yet been able to locate the apex of the Copper Vein. It is also undisputed that if Sunshine has, in fact, claimed extralateral rights to the Copper Vein, it bears the burden of proving that it has the apex of the Copper Vein within the boundaries of its claim. Thus, assuming arguendo that Sunshine did assert extralateral rights in the Copper Vein, the district court would have been correct in quieting title to the vein in Metropolitan when it appeared that Sunshine was unable to prove that it had the apex within its intralimital boundaries.

I.C. § 6–401 provides that a party may bring an action to quiet title "against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim." The district court concluded that Sunshine had made an adverse claim to Metropolitan's property, and when it appeared that Sunshine was completely unable to prove any basis for that claim, quieted title in Metropolitan. Sunshine contends, however, that it did not assert any extralateral rights to the Copper Vein and, therefore, that there was no adverse claim in Metropolitan's property for the district court to quiet title against.

Sunshine initiated the present dispute in 1979 by sending a letter to Metropolitan in which it made the following claims:

"The Unit Participants [Sunshine, Hecla Mining Company and Silver Dollar Mining Company] are entitled, in the exercise of their extralateral rights under the provisions of 30 U.S.C. § 26, to mine the Copper Vein in Metropolitan's property and to retain all profits from the vein for their benefit."

Shortly thereafter Sunshine followed up on its letter by filing the original complaint in this action in which it again claimed ownership of the Copper Vein under the law of extralateral rights.

### "COUNT II.

" . . . .

### "III.

"Said 'Copper Vein' is dipping southerly and portions of said vein will be in Metropolitan property on the 5,000–foot level or sooner and could in the future be

entirely within the intralimital boundaries of Metropolitan property at greater depth. The Sunshine Unit claims ownership to said vein through extralateral rights as defined in 30 U.S.C. 26. Metropolitan denies ownership of said vein by the Sunshine Unit and adversely makes claim to ownership of said vein within the intralimital boundaries of its property.

"NOW WHEREFORE, Sunshine prays:

" . . . .

"3. Under Count II for a Decree of this Court quieting title in the sunshine Unit to the 'Copper Vein" which presently is or could be located within intralimital boundaries of Metropolitan property, including the right to mine and develop said vein regardless where the same might be located in Metropolitan's property."

It is apparent from the above that Sunshine did assert an adverse claim to Metropolitan's property.

It is Sunshine's position, however, that the cloud it placed on Metropolitan's title was eliminated by the filing of the amended complaint deleting all references to any ownership claims by Sunshine in the Copper Vein. Essentially, Sunshine is arguing that it was free to lay claim to a vein of ore potentially worth hundreds of thousands of dollars and to pursue that claim in the courts of this state, thereby putting Metropolitan to the time and expense of defending the same, and then, when it became apparent that it could not prove its claim, to simply walk away leaving the question of Metropolitan's title to the vein in a state of uncertainty. We cannot agree with Sunshine's position.

The instant case is very similar to the 1913 Idaho case of *Stewart Mining Co. v. Ontario Mining Co.*, 23 Idaho 731, 132 P. 787 (1913). In *Stewart*, the plaintiff, Stewart Mining Company, initiated an action against Ontario Mining Company alleging that Ontario was mining ore which belonged to Stewart by virtue of Stewart's extralateral rights. Ontario denied Stewart's allegations and cross-claimed for quiet title asking that Stewart be required to delineate any claims it had by reason of any of its locations, in the ore body located within Ontario's intralimital boundaries. In response to the cross-claim, Stewart stated that one of its mining locations, the Switchback location, had not yet been explored or developed sufficiently to determine whether the vein in question apexed within it. The trial court found for Ontario and entered judgment enjoining Stewart from "asserting any right, title or interest in or to the said Ontario mining claim or the ores or minerals therein adverse to the Ontario mining company."

Stewart appealed and as one of its arguments on appeal objected, much as does Sunshine in the instant case, to the fact that the trial court's decree prevented it from subsequently locating the apex to the vein within the Switchback location and asserting extralateral rights to the vein on that basis. Stewart argued that the decree should in no way affect its extralateral rights under the Switchback location. This Court affirmed stating that the decree properly quieted title against the Switchback location.

A case even more squarely on point is the decision of the Arizona Supreme Court in *Arizona Commercial Mining Co. v. Ironcap Copper Co.*, 29 Ariz. 23, 239 P. 290 (1925). There, as here, the plaintiff, Ironcap, asserted extralateral rights in ground owned by the defendant, Arizona Commercial. After asserting its claim both judicially and non-judicially, Ironcap responded to Arizona Commercial's suit for quiet title with the assertion that because the apices to the veins in question had not yet been discovered, the court was without jurisdiction to quiet title. There, as here, the adverse claimant sought to maintain a cloud on the surface owners's title without either affirming or disclaiming any rights therein.

We are in agreement with the following statement of the Arizona Supreme Court.

"A. may not assert in court a right against B., and then when B. by affirma-

tive action attempts to determine that right, set up that he neither affirms nor denies B.'s right nor his own, and thus leave the matter in statu quo indefinitely.

...

"We are of the opinion that when a party has once asserted that certain well defined veins of mineral matter lying within the bounds of another's property are underground segments of equally well defined veins apexing in his claims, he must then stand or fall, in so far as that particular assertion is concerned, in the suit brought to quiet title as against it, and may not by a mere plea of ignorance as to the facts prevent his opponent from having the title which he himself has asserted being then and there determined."

■ We conclude, as did the trial court, that through its actions in sending the March 9, 1979 letter and filing the instant law suit, Sunshine asserted an adverse claim to Metropolitan's property which Metropolitan was entitled to have quieted. The district court's judgment granting Metropolitan's motion for summary judgment quieting title to that portion of the Copper Vein lying within Metropolitan's intralimital boundaries against any claim of extralateral rights by Sunshine is therefore affirmed.

Sunshine has asserted throughout this appeal, both in its appellate briefs and at oral argument, that the district court's judgment interferes with the rights granted to Sunshine under the three contractual agreements previously entered into between the parties. We, however, find no basis for this assertion. The district court's judgment granted Metropolitan quiet title to that portion of the Copper Vein within Metropolitan's intralimital boundaries against any present or future claim by Sunshine *under the law of extralateral rights.* Any property rights that Sunshine may have in the vein pursuant to the parties' agreements are not affected by the judgment.

At the time the district court granted summary judgment to Metropolitan, there were no issues before the court as to the parties' contractual agreements. Judge Towles had previously found in his April 20, 1981 order, that the agreements were unambiguous and not in need of court interpretation. Thereafter, the parties voluntarily agreed to dismiss Sunshine's amended complaint leaving only the extralateral rights issue for resolution by the district court. In sum, any rights that Sunshine may have by virtue of its contractual agreements with Metropolitan are unaffected by the judgment in this case.

■ Finally, Sunshine objects to the trial court's award of attorney fees to Metropolitan at trial pursuant to I.C. § 12–121. I.R. C.P. 54(e)(1) provides that in a civil action the court may award reasonable attorney fees to the prevailing party when it finds that "the case was brought, pursued or defended, frivolously, unreasonably or without foundation...."

An award of attorney fees under I.C. § 12–121 is discretionary; but it must be supported by findings and those findings, in turn, must be supported by the record. *Wing v. Amalgamated Sugar Co.,* 106 Idaho 905, 910, 684 P.2d 307, 312 (1984). In the instant case, the trial court specifically found that Sunshine initiated this law suit without any foundation for its claim of extralateral rights. "Sunshine Mining Company asserted its claims of ownership to the 'Copper Vein' outside of its intralimital boundaries without having knowledge of or reasonable expectation to be able to prove the location of the apex thereof...." This finding is amply supported by the record and will not be disturbed on appeal.

The decision of the district court granting summary judgment to Metropolitan is affirmed.

Costs to respondent.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.